UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SAHIN SAHIN,

      Petitioner,

v.

FERETI SEMAIA, et al.,

      Respondents.

Case No. 5:26-cv-02241-KES

ORDER GRANTING THE PETITION AND ORDERING PETITIONER'S RELEASE FROM CUSTODY

## I. INTRODUCTION

Sahin Sahin ("Petitioner") filed a counseled petition for writ of habeas corpus under 28 U.S.C. § 2241 ("Petition" at Dkt. 1), challenging his detention by the Department of Homeland Security ("DHS"), Immigration and Customs Enforcement ("ICE"). The parties have consented to the jurisdiction of the Magistrate Judge. (Dkt. 8.)

Petitioner entered without inspection and was briefly detained by ICE in 2022. He was then released on his own recognizance. Almost four years later, on April 24, 2026, Petitioner was re-detained by ICE at a routine immigration check-in. This re-detention was illegal because Petitioner was entitled to a pre-detention

1

hearing under the Fifth Amendment Due Process Clause.  The Petition is therefore granted and Respondents are directed to immediately release him from custody.

## II.     PROCEDURAL HISTORY

Petitioner filed the present Petition on April 29, 2026.  (Dkt. 1.)  The Petition raises the following claims:

Ground 1: Respondents violated Petitioner's Fifth Amendment substantive due process rights because he "is not a flight risk or danger to the community" and his detention is "punitive," "bear[ing] no 'reasonable relation' to any legitimate government purpose."  (Pet. at 18-19 ¶¶ 94-98.)

Ground 2: Respondents violated Petitioner's Fifth Amendment procedural due process rights by re-detaining him "without a pre-deprivation hearing or notice of parole revocation" and without any "change in circumstances."  (Pet. at 19-20 ¶¶ 99-103.)

Ground 3: Respondents violated the Immigration and Nationality Act ("INA") because Petitioner is being detained without a bond hearing as an "arriving alien" or "applicant for admission" under 8 U.S.C. § 1225(b), even though he is not one because he was "paroled into the United States."  (Pet. at 20 ¶¶ 104-109.)

Ground 4: Respondents "did not comply with the statutory or regulatory requirements to arrest or detain Petitioner," i.e., 8 U.S.C. § 1357 and 8 C.F.R. §§ 287.3 and 287.8.  (Pet. at 20-21 ¶¶ 110-12.)

The Petition seeks immediate release from custody or, alternatively, a bond hearing within seven days.  (Pet. at 21.)

Respondents answered the Petition on May 7, 2026.  ("Answer" at Dkt. 11.)  The Answer attaches a declaration from Deportation Officer Fernando Negrete.  ("Negrete Decl." at Dkt. 11-1.)  Respondents argue, first, that Petitioner was re-detained by immigration authorities because he was arrested by state authorities for criminal activity in November and December of 2025, which violated the terms of

2

his order of release.  (Answer at 2.)  They argue that the INA "does not require advance notice or a hearing before arrest or re-detention," and "due process in the [§ 1226(a)] context is satisfied through post-detention custody review, including the opportunity to seek a bond hearing before an Immigration Judge."  (Answer at 3.)  Finally, they argue, "Even if there were some defect in the revocation of Petitioner's parole status—which the Petition does not establish—then the narrowly tailored remedy would not be immediate release, but rather (1) rectifying that procedural deficiency; or (2) Petitioner simply seeking a bond hearing consistent with his rights as a detainee—which are adequately protected, like other detainees, by the existing bond hearing regime."  (Answer at 3.)

Petitioner filed a reply on May 12, 2026.  ("Reply" at Dkt. 14.)  He does not contest that he was arrested on suspicion of criminal activity in 2025, but he argues that he "has never been convicted of any crime, was never formally charged in the alleged theft matter, and has consistently complied with immigration proceedings and supervision requirements."  (Id. at 2.)  The Reply attaches a declaration from attorney Paul R. Brabeck, who represented Petitioner in connection with his criminal arrest.  (Id. at 2-3; id. at 6-11 (Reply Ex. 1, "Brabeck Decl.").)  Petitioner also argues that a post-detention bond hearing would not cure the violation of his due process rights based on the failure to provide a pre-deprivation hearing.  (Reply at 4.)

III.  FACTUAL RECORD

Petitioner is a 25-year-old native and citizen of India.  (Pet. at 4 ¶ 15; id. at 14 ¶ 55; Negrete Decl. ¶ 4.)  He entered the U.S. without inspection on or around October 22, 2022.  (Pet. at 14 ¶ 56.)  On October 25, 2022, Customs and Border Protection agents encountered and arrested Petitioner at or near Calexico, California.  (Negrete Decl. ¶ 5.)  According to Officer Negrete, he "was encountered and apprehended … without the issuance of charging documents."  (Negrete Decl. ¶ 5.)

3

He was initially taken into custody pending a credible fear interview with an asylum officer, but "due to a lack of bed space," he "was released on [an OREC] and was provided Form I-220A." (Negrete Decl. ¶ 5; see also Pet. at 14 ¶ 58 (stating Petitioner was released on his own recognizance).) The Form I-220A Order of Release on Recognizance, which is dated October 25, 2022, stated:

> You have been arrested and placed in removal proceedings. In accordance with section 236 of the [INA] and the applicable provisions of Title 8 of the Code of Federal Regulations, you are being released on your own recognizance provided you comply with the following conditions:
>
> • You must report for any hearing or interview as directed by the [DHS] or [EOIR].
> • You must surrender for removal from the United States if so ordered.
> • You must report in person to DUTY OFFICER at 655 W. Rialto Ave., San Bernardino, CA 92410 on 11/09/2022 at 8:00 AM.
> • You must not change your place of residence without first security written permission from the immigration officer listed above.
> • You must not violate any local, State, or Federal laws or ordinances.
> • You must assist [DHS] in obtaining any necessary travel documents.
> • Other: Not authorized for employment.
>
> …
>
> Failure to comply with the conditions of this order may result in revocation of your release and your arrest and detention by [DHS].

(Negrete Decl. Ex. 1 (the Form I-220A).)

About six months later, on May 4, 2023, DHS issued a notice to appear ("NTA") alleging that Petitioner "entered the country without inspection, permission, or proper entry document and was therefore inadmissible." (Pet. at 15 ¶¶ 63-64.) It appears this NTA was served on Petitioner on May 8, 2023, because

4

this is the date removal proceedings against Petitioner were initiated.  See Executive Office for Immigration Review ("EOIR"), Automated Case Information, https://acis.eoir.justice.gov/en/ (last accessed May 18, 2026).[1]

On August 21, 2023, Petitioner filed an application for asylum and withholding of removal.  (Pet. at 14 ¶ 60.)   At some point, according to Petitioner, he obtained employment authorization and was working legally.  (Pet. at 14 ¶ 60.)

On November 6, 2025, Petitioner was arrested for felony grand theft: money/labor/property, see Cal. Pen. Code § 487(a), and obtaining money by false pretenses, see Cal. Pen. Code § 532(a).  (Negrete Decl. ¶ 7.)  "[A]s of January 08, 2026, no charges were filed by the Los Angeles County District Attorney's Office arising out of" this arrest.  (Brabeck Decl. ¶ 1.)  On December 21, 2025, Petitioner was arrested for reckless driving, see Cal. Veh. Code § 23103(b).  (Negrete Decl. ¶ 9.)  Petitioner received a traffic ticket as a result of this arrest and completed a reckless driving intervention program in April 2026.  (Reply at 3; Reply Ex. 2 (program completion certificate).)  On both occasions, Officer Negrete states that Petitioner "appears to have been released from law enforcement custody before action could be taken" by ICE.  (Negrete Decl. ¶¶ 8, 10.)

On April 24, 2026, Petitioner was re-detained by ICE when he appeared for a scheduled interview.  (Pet at 2 ¶ 2; id. at 15 ¶ 67; Negrete Decl. ¶ 11.)  The Petition alleges that Petitioner was detained with "no advance notice or hearing" and no "notice of parole revocation…."  (Pet. at 2 ¶ 2; id. at 19-20 ¶ 102.)  According to Officer Negrete, ICE officers "took Petitioner into custody, based on his criminal activity…." (Negrete Decl. ¶ 12.)  However, his declaration is silent

---

[1] Officer Negrete states that agents served Petitioner with an NTA on October 25, 2022, several days after his arrest.  (Negrete Decl. ¶ 6.)  The record does not contain a copy of this or any other NTA.  EOIR online records state that immigration proceedings were begun against Petitioner on May 8, 2023, which is consistent with Petitioner's allegation that the NTA was issued on May 4, 2023.

as to whether officers served Petitioner with any written notice of the reasons why his OREC was being revoked or whether officers gave him an interview at which he could contest those reasons.  Petitioner was not given a bond hearing either before or after he was re-detained.  (Pet. at 15 ¶ 68.)

Petitioner remains in ICE custody in Adelanto, California.  (Pet. at 4 ¶ 15); ICE Detainee Locator, https://locator.ice.gov/odls/ (last accessed May 18, 2026). His removal case remains pending, and there are currently no hearings scheduled in the case.  (Pet. at 15 ¶ 70); see EOIR, Automated Case Information, https://acis.eoir.justice.gov/en/ (last accessed May 18, 2026).

## IV.    DISCUSSION

### A.    Petitioner is Entitled to Relief on Ground 3, Because His Detention is Governed by § 1226(a) not § 1225(b).

Petitioner alleges that Respondents violated the INA by detaining him pursuant to § 1225(b)(2)(A) as an "applicant for admission," even though his detention is properly governed by § 1226(a).  (Pet. at 20 ¶¶ 104-09; see also id. at 9-11 ¶¶ 33-42.)  Respondents' Answer does not specifically respond to this argument.  They appear to concede that his detention is governed by § 1226(a) rather than § 1225(b).  (See Answer at 3 ("DHS has discretionary authority to arrest and detain an alien pending a decision on whether the alien is to be removed from the U.S.  8 U.S.C. 1226(a).  The statute does not require advance notice or a hearing before arrest or re-detention. … Due Process in the § 236(a) context is satisfied through post detention custody review, including the opportunity to seek a bond hearing before an Immigration Judge.").)

The Court finds that Petitioner's current detention is properly governed by § 1226(a).  See generally Maldonado Bautista v. Santacruz, 813 F. Supp. 3d 1084, 1104 (C.D. Cal. 2025) ("When considering the statutory definitions of the INA and the plain text of § 1225, it is unambiguous that 'applicants for admission' do not include noncitizens already in the United States like Petitioners….").  Thus, there

6

is no dispute that, at a minimum, Petitioner is entitled to an order requiring Respondents to provide him with a bond hearing. As discussed further below, however, because Petitioner was entitled to and did not receive a *pre-deprivation* bond hearing under Due Process Clause of the Fifth Amendment, the appropriate remedy is release from custody rather than ordering a post-deprivation bond hearing.

**B.    Petitioner is Entitled to Relief on Ground 2, Because He Was Entitled to a Pre-Deprivation Hearing as a Matter of Due Process.**

Petitioner argues that Respondents violated his Fifth Amendment procedural due process rights by re-detaining him "without a pre-deprivation hearing or notice of parole revocation" and without any "change in circumstances." (Pet. at 19-20 ¶¶ 99-103.) Respondents argue that they have demonstrated changed circumstances based on Petitioner's 2025 arrests, and that a post-deprivation hearing is sufficient to protect Petitioner's due process rights. (Answer at 2-3.)

**1.    Legal Standard.**

Under the Fifth Amendment Due Process Clause, no person shall be "deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. "The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" Mathews v. Eldridge, 424 U.S. 319, 333 (1976) (quoting Armstrong v. Manzo, 380 U.S. 545, 552 (1965)). "[T]he Due Process Clause of the Constitution may require greater procedural protections than a statutory or regulatory scheme provides when freedom from imprisonment is at stake." Perez Bueno v. Janecka, No. 25-cv-03376-CAS-BFM, 2026 WL 309934, at *3, 2026 U.S. Dist. LEXIS 24644, at *7 (C.D. Cal. Feb. 5, 2026). To determine what procedural protections an individual is owed in the event of a government deprivation of a protected liberty interest, courts balance three factors: (a) the private interest that will be affected by the official action; (b) the risk of an erroneous deprivation of such interest and the

value of additional procedural safeguards; and (c) the countervailing government interest.  Mathews, 424 U.S. at 335.

    **2.**    **Analysis.**

    a.    Liberty Interest and Private Interest Affected.

"Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that Clause protects."  Zadvydas v. Davis, 533 U.S. 678, 690 (2001).  To determine whether a specific conditional release rises to the level of a protected liberty interest, '[c]ourts have resolved the issue by comparing the specific conditional release in the case before them with the liberty interest in parole as characterized by Morrissey [v. Brewer, 408 U.S. 471 (1972)].'"  Omer G. G. v. Kaiser, No. 25-cv-01471, 2025 WL 3254999, at *5 (E.D. Cal. Nov. 22, 2025) (quoting Gonzalez-Fuentes v. Molina, 607 F.3d 864, 887 (1st Cir. 2010)).

    In Morrissey, the Supreme Court explained that parole from a criminal conviction "enables [the parolee] to do a wide range of things open to persons" who have never been in custody or convicted of any crime, including to live at home, work, and "be with family and friends and to form the other enduring attachments of normal life."  Morrissey, 408 U.S. at 482.  "Though the [government] properly subjects [the parolee] to many restrictions not applicable to other citizens," such as monitoring and seeking authorization to work and travel, his "condition is very different from that of confinement in a prison."  Id.  "The parolee has relied on at least an implicit promise that parole will be revoked only if he fails to live up to the parole conditions."  Id.  The revocation of parole undoubtedly "inflicts a grievous loss on the parolee."  Id. (quotations omitted).  Therefore, a parolee possesses a protected interest in his "continued liberty."  Id. at 481-84.

Omer G. G., 2025 WL 3254999, at *5 (parallel citations omitted).

Petitioner's release on his own recognizance likewise created a promise that he would not be re-detained unless he violated the conditions of his release. (See Negrete Decl. Ex. 1 (the Form I-220A, stating "you are being released on your own recognizance *provided you comply with the following conditions*") (emphasis added).) Petitioner lived in the U.S. for almost four years under these conditions, legally working and applying for asylum relief. (Pet. at 14 ¶ 60); see, e.g., Alvarenga Matute v. Wofford, 807 F. Supp. 3d 1120, 1129 (E.D. Cal. 2025) ("Petitioner's release on his own recognizance pending his immigration proceedings was similar [to Morrissey]. Among other things, it allowed him to live with, care for, and financially support his wife. Petitioner also pursued relief in his removal proceedings."). Accordingly, Petitioner had a liberty interest in remaining out of custody that is protected by the Due Process Clause.[2]

> b.    Risk of Erroneous Deprivation and Value of Additional Procedural Safeguards.

"[T]he risk of erroneous deprivation of liberty is high absent the procedural safeguard of a pre-deprivation hearing before a neutral decisionmaker to determine whether Petitioner's detention bears a reasonable relation to the authorized statutory purposes of civil immigration detention: to ensure appearance at future immigration proceedings or to prevent danger to the community." Perez Bueno, 2026 WL 309934, at *4, 2026 U.S. Dist. LEXIS 24644, at *9 (citing Zadvydas, 533 U.S. at 693-94).

---

[2] Respondents assert that Petitioner's 2025 arrests violated the conditions of his release, while Petitioner contends that they did not. "It is not necessary to resolve this factual dispute in this action. The issue here is whether the Due Process Clause requires a hearing before a neutral arbiter who will determine whether there are any changed circumstances warranting petitioner's re-detention." Alvarenga Matute, 807 F. Supp. 3d at 1129. As discussed further below, a pre-deprivation bond hearing is the appropriate place to resolve such factual disputes.

9

Petitioner's previous release on his own recognizance means that ICE determined that he was not a danger to the community or a flight risk. See generally 8 U.S.C. § 1226(a) (providing that DHS may detain a noncitizen "pending a decision on whether the alien is to be removed from the United States" or may release them on bond or conditional parole); 8 C.F.R. § 236.1(c)(8) ("Any officer authorized to issue a warrant of arrest may, in the officer's discretion, release an alien not described in section 236(c)(1) of the Act, under the conditions at section 236(a)(2) and (3) of the Act; provided that the alien must demonstrate to the satisfaction of the officer that such release would not pose a danger to property or persons, and that the alien is likely to appear for any future proceeding.").

Respondents argue that they have demonstrated a material change in circumstances justifying Petitioner's re-detention because of his 2025 arrests, which they say violated the conditions of his release. (Answer at 2.) There is no evidence that Respondents ever notified Petitioner—prior to this case being filed—that these arrests were the reason he was being re-detained, or that they gave him an opportunity to respond. Petitioner alleges that he was detained with no "notice of parole revocation" (Pet. at 2 ¶ 2; id. at 19-20 ¶ 102), and Officer Negrete's declaration is silent on the issue.

The condition of release at issue stated that Petitioner "must not violate any local, State, or Federal laws or ordinances." (Negrete Decl. Ex. 1 (the Form I-220A).) In the present case, Petitioner has submitted at least some evidence that he did not actually violate local or state laws, despite the arrests, because it does not appear that the arrests ever resulted in criminal charges. (See Brabeck Decl. ¶ 1; Reply Ex. 2.)

This dispute over whether and how Petitioner violated the terms of his release underscores the need for meaningful notice and an opportunity to be heard prior to Petitioner's immigration detention. Written notice and a pre-deprivation hearing would require the government to produce its evidence of changed

10

circumstances and give Petitioner an opportunity to challenge that evidence. Requiring the government to do so *before* Petitioner's arrest gives him a meaningful opportunity to retain counsel and collect evidence.  Without these safeguards, "the risk of an erroneous deprivation of liberty is high because neither the government nor [Petitioner] has had an opportunity to determine whether there is any valid basis for [his] detention." Fernandez, 2026 WL 136229, at *5; see also Asad v. Noem, No. 26-cv-620, 2026 WL 775628, at *3 (W.D. Wash. Mar. 19, 2026) ("ICE revoked Petitioner's release at a scheduled check-in based solely on internal ATD entries, without prior written notice, without specifying the alleged violations in advance, and without any meaningful opportunity to be heard. … Proceeding on untested contractor and agency records, with no mechanism for explanation or correction, creates a significant risk of error.").

> c.  Countervailing Government Interest.

As many other courts have recognized, there is no meaningful countervailing government interest that supports detaining previously released noncitizens like Petitioner without a pre-detention hearing. Ramos-Maldonado, 2026 WL 790788, at *4, 2026 U.S. Dist. LEXIS 57088, at *11 (collecting cases); Gudavasov, 2026 WL 712827, at *2,  2026 U.S. Dist. LEXIS 49484, at *6 (same).

Additionally, the burden of a pre-detention hearing is low.  In immigration court, custody hearings are routine and impose a minimal cost.  In this Court's experience, Respondents are routinely able to comply with orders requiring that such a hearing be held within seven days.  Respondents have presented no evidence to the contrary.

> d.  Appropriate Remedy is Release and Prospective Injunctive Relief.

Releasing Petitioner is narrowly tailored to the specific wrong, because it restores the status quo that was in effect before Respondents violated Petitioner's due process rights.  Moreover, allowing the government to "cure" such a violation

11

by providing a post-detention hearing would effectively render any holding that a pre-detention hearing is required meaningless; the government could always wait until a habeas petition is filed and then offer to hold a hearing.

Many courts have found that a post-detention bond hearing is insufficient in this context. See Gudavasov v. Marin, No. 26-cv-00541-AH-MBK, 2026 WL 712827, at *3 (C.D. Cal. Mar. 9, 2026) (collecting cases finding that release, rather than a post-detention bond hearing, is the appropriate remedy); Sachin v. Warden, No. 26-cv-00707-MWC-ADS, 2026 U.S. Dist. LEXIS 36819, at *9-11 (C.D. Cal. Feb. 21, 2026) (granting TRO ordering Petitioner's release, instead of a post-deprivation bond hearing, finding "Respondents … fail to recognize that a bond hearing constitutes post-deprivation relief, which has no bearing on whether Respondents provided the requisite pre-deprivation relief.").[3]

In fact, courts have most frequently found that this type of due process violation warrants *both* immediate release from custody *and* an injunction preventing further violations of Petitioner's due process rights. See, e.g., Medrano-Rocha, 2026 WL 411355, at *7 (ordering petitioner's release and enjoining re-detention "without providing him a pre-detention hearing before a neutral decisionmaker where Respondent bears the burden of demonstrating by clear and convincing evidence that Petitioner is a flight risk or a danger such that his physical custody is required"); Nieves, 2026 WL 931143, at *4 (granting release and enjoining re-detention "unless his re-detention is ordered at a custody hearing before a neutral arbiter and the government has shown justification for this

---

[3] Aguilar v. Semaia, No. 26-cv-00023-MCS-SSC, 2026 WL 166906 (C.D. Cal. Jan. 16, 2026)—a case in which the court found that a post-deprivation hearing was sufficient relief—is factually distinguishable because Aguilar "received significantly more process than in other cases in which courts have granted relief under Mathews," including appointment of counsel in his immigration case (due to incompetency) and a recent, post-arrest hearing before an IJ. Id. at *5.

detention"); Fernandez, 2026 WL 136229, at *7 (ordering release and enjoining re-detention "unless [Respondents] demonstrate, by clear and convincing evidence at a pre-deprivation bond hearing before a neutral decisionmaker, that there has been a material change in circumstances justifying Petitioner's re-detention"). Based on the weight of this persuasive authority, the Court will order both types of relief here.

The prospective injunctive relief sought in the Petition is as follows:

6. Enjoin Respondents from re-detaining Petitioner unless his re-detention is ordered at a custody hearing before a neutral arbiter in which the government bears the burden of proving, by clear and convincing evidence, that Petitioner is a flight risk or danger to the community; [and]

7. Order that Respondents may not re-detain Petitioner while Section 240 proceedings are ongoing, including during any direct appeal from dismissal of proceedings by the IJ absent a change in circumstances.

(Pet. at 21.)  The Court agrees that, because of Petitioner's prior release on an order of recognizance, the government must demonstrate some material change in circumstances occurred after his prior release on October 25, 2022.  The appropriate time period for this injunctive relief is the period in which Petitioner's detention is governed by § 1226(a).  See 8 U.S.C. § 1226(a) (providing a noncitizen "may" be detained "pending a decision on whether the [noncitizen] is to be removed from the United States").  If a removal order is entered against Petitioner, he may be constitutionally detained during the statutory "removal period."  See 8 U.S.C. § 1231(a)(1)-(2) (defining the removal period and making detention during this period mandatory).  Petitioner has not demonstrated that he would be entitled to a pre-deprivation bond hearing in order to be constitutionally detained during this removal period.  Cf. Khotesouvan v. Morones, 386 F.3d 1298,

13

1301 (9th Cir. 2004) ("the period of detention under § 1231(a)(2) … passes constitutional scrutiny" because such detention is not prolonged or indefinite).

## V.    CONCLUSION

IT IS THEREFORE ORDERED that:

1.    The Petition is granted as to Grounds 2 and 3, and the other grounds are dismissed as moot.

2.    Respondents shall immediately release Petitioner from custody.  If Respondents have not released Petitioner within three days of the date of this order, Petitioner may file a request for an order to show cause re contempt.

3.    While a decision on whether to remove Petitioner is pending within the meaning of § 1226(a), Respondents are enjoined from re-detaining Petitioner unless his re-detention is ordered at a custody hearing before a neutral arbiter at which the government bears the burden of proving by clear and convincing evidence that Petitioner is a flight risk or danger to the community due to a material change in circumstances.[4]

DATED:    May 18, 2026

_Karen E. Scott_

KAREN E. SCOTT
UNITED STATES MAGISTRATE JUDGE

---

[4] To the extent Petitioner seeks attorney's fees and costs under the Equal Access to Justice Act ("EAJA"), Petitioner's counsel would need to file a post-judgment motion that complies with 28 U.S.C. § 2412(d)(1)(B).